UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**MICHAEL BRIAN HICKMAN,**

    **Plaintiff,**

                                                          Civil Action 2:16-cv-859
                                                          Judge George C. Smith
    v.                                                   Magistrate Judge Chelsey M. Vascura

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Michael Brian Hickman, brings this action under 42 U.S.C. § 405(g) for a review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Social Security Disability Insurance benefits and Supplemental Security Income benefits. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 23-1), the Commissioner's Memorandum in Opposition (ECF No. 28), Plaintiff's Reply (ECF No. 30), and the administrative record (ECF Nos. 19 & 20). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

### I. BACKGROUND

Although not in consideration in this matter, by way of background, Plaintiff filed an application for Disability Insurance Benefits and Supplemental Security Income on September 27, 2006. Following initial administrative denials of his applications, Administrative Law

Judge Timothy Keller affirmed the denials of Plaintiff's applications on September 16, 2009. (*See* R. at 2109.) On June 21, 2010, subsequent review by the Appeals Council found no basis to review the decision (*Id.* at 193–95.)

Plaintiff filed another application for disability insurance benefits and supplemental security income benefits in August 2010. The state agency denied these applications initially and upon reconsideration. On June 8, 2011, Administrative Law Judge Paul Yerian denied Plaintiff's request for a hearing as untimely. (R. at 246–51.)

On July 12, 2011, Plaintiff filed the application at issue for disability insurance benefits and supplemental security income benefits. (R. at 350.) Plaintiff alleges the disabling condition started on June 22, 2010. (*Id.* at 360.) Plaintiff contends he is disabled as a result of a number of alleged impairments, including asthma, neck problems, symmetric arthritis, depression, and anxiety. (*Id.* at 371.) The state agency denied his most recent application for benefits. (*Id.* at 255–83.) Plaintiff then had a hearing before Administrative Law Judge Thomas Wang ( the "ALJ") on May 17, 2013. (*Id.* at 45–85.) The ALJ denied Plaintiff's application for benefits in a written opinion dated July 10, 2013. (*Id.* at 19–32.) The Appeals Council denied Plaintiff's request for review, prompting Plaintiff to commence in action in this Court. On August 21, 2015, the parties agreed to remand the action to the Commissioner for further consideration. (*Id.* at 2247–48.) The Appeals Council instructed the ALJ to give further consideration to the non-treating source opinions of Drs. Marc Miller and Christopher Ward. (*Id.* at 2250–53.)

The ALJ held another administrative hearing on January 20, 2016, and issued a written opinion on February 25, 2016, denying Plaintiff's claims for disability. (R. at 2109–28.) The

Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed this action for judicial review.

In his Statement of Errors, Plaintiff raises a single issue. Specifically, Plaintiff asserts that the ALJ erred in his consideration and weighing of the opinion of consultative examiner Dr. Marc Miller, Ph.D. According to Plaintiff, the ALJ failed to sufficiently explain why he assigned only little weight to Dr. Miller's opinion yet credited the opinion of Dr. Christopher D. Ward, Ph.D. In Plaintiff's view, both opinions support his application for disability. Plaintiff further posits that his treatment records support Dr. Miller's findings. Finally, Plaintiff emphasizes that Dr. Miller assigned him a Global Assessment of Functioning ("GAF") score of 46 and that both Drs. Miller and Ward found him to be credible.[1]

In her Memorandum in Opposition, the Commissioner counters that the ALJ reasonably considered weighed Dr. Miller's opinion when determining Plaintiff's RFC. (Comm'r's Mem. in Opp. 5, ECF No. 28.) The Commissioner further posits that the ALJ offered good reasons for discounting Dr. Miller's opinion and that the RFC assessed reasonably accounted for Plaintiff's limitations and is supported by substantial evidence.

## II. RELEVANT RECORD EVIDENCE[2]

### A. Dr. Marc Miller

Consultative Examiner Marc Miller, Ph.D. conducted a psychological evaluation of Plaintiff on October 28, 2010. (R. at 1296–1300.) Dr. Miller noted that Plaintiff "appeared to

---

[1] The GAF scale is used to report a clinician's judgment of an individual's overall level of functioning. Clinicians select a specific GAF score within the ten-point range by evaluating whether the individual is functioning at the higher or lower end of the range. A GAF score of 50-41 is indicative of serious symptoms.

[2] The Undersigned limits discussion to evidence bearing on the sole contention of error Plaintiff raises in his Statement of Errors. (ECF No. 23-1.)

be a reliable, credible informant." (*Id.* at 1298.)  Plaintiff reported that "he had no friends." With regard to Plaintiff's behavior, Dr. Miller observed as follows: "[Plaintiff] presented himself as very depressed.  He was very sarcastic, agitated and frustrated throughout the interview." (*Id.*)  Dr. Miller observed a tremor in Plaintiff's left hand and noted that Plaintiff talked fast and in excess during the interview.  (*Id.*)  Dr. Miller also noted that Plaintiff had trouble focusing during the interview, and that the "[c]onversation was intelligible, he spoke in 2 to 8 word sentences."  (*Id.*)  Plaintiff ranked his depression level at a 7 or 8 on scale of 1–10, and Dr. Miller commented that he "would place it at an 8 without medication."  (*Id.*)  Dr. Miller also agreed with Plaintiff's self-reported anxiety ranking of 7 out of 10.  (*Id.*)  Plaintiff reported that he has anxiety attacks when around crowds or people and also noted "difficulty with agitation, impatience, and irritability in regard to his pain."  (*Id.*)

Dr. Miller assessed Plaintiff's intellect as in the "borderline range."  He noted that Plaintiff's "concentration is poor" and opined that Plaintiff has "moderate problem solving and poor organizational abilities."  (*Id.*)  He observed, however, that Plaintiff could "recall six numbers forward, and four in reverse."  (*Id.*)  Plaintiff told Dr. Miller that he could follow one-step instructions but that he "used to be a multi-task" person.  (R. at 1299.)  Dr. Miller noted that Plaintiff's "coping skills are poor" and that he can "become[] overwhelmed quickly." (*Id.*)  With regard to his lack of income, Plaintiff placed his stress level at an 8 on a 1-10 scale. With respect to his daily activities, Plaintiff reported he had a driver's license but does not drive and has no hobbies.  (*Id.*)  Plaintiff also reported he could "prepare his own meals, laundry, cleaning and dishes and grocery shopping," as well as manage his own money.  (*Id.*)

Dr. Miller offered the following opinions:

4

> [Plaintiff's] cognitive ability to understand, remember and carry out routine instructions indicate no impairment.
>
> Ability to interact with coworkers, supervisions and the public, indicate marked impairment, due to his agitation, irritability, temper, depression, and avoidance of others.
>
> The ability to maintain attention span and concentration indicates moderate impairment, due to anxiety.
>
> The ability to deal with stress and pressure in a work setting notes marked impairment.
>
> Persistence in task completion, indicates marked impairment.
>
> The GAF function level is approximately 50, in regard to his prior injury, numerous health issues, pain, limited income.

(R. at 1299–1300.)

Dr. Miller diagnosed Plaintiff with a severe pain disorder with psychological factors; a moderate to severe dysthymic disorder and generalized anxiety disorder; and described his psychosocial stressor as "poor," due to "limited income, years of medical care, pain clinics, [and] psychiatric counseling."  (*Id.* at 1300.)

**B.     Dr. Christopher Ward**

Plaintiff underwent another psychological evaluation on April 6, 2012, with psychologist Christopher Ward, Ph.D. upon referral from the Ohio Division of Disability Determination ("DDD").   (R. at 1915.)   Plaintiff reported that he completed school through the ninth grade and had problems engaging socially while at school.   (*Id.* at 1916.)   Plaintiff denied a history of alcohol or drug abuse, but did report legal convictions of DUIs.   (*Id.*)   With regard to his medical history, Plaintiff indicated that he underwent a significant weight loss which he

attributed to less appetite and a nervous stomach.  (*Id.*)  Plaintiff described his medical conditions as follows: "a stroke on his right side, fibromyalgia, arthritis, hypertension, GERD, asthma, COPD, left sciatic nerve pain, and osteoarthritis.  (*Id.*)  Plaintiff described his functional limitations in conjunction with his medical issues as "difficulty walking, standing, sitting, lifting and bending."  (*Id.*)  Plaintiff indicated that he was taking the following medications: "Combivent, Pravastatin, Propranolol, Cymbalta and Lyrica[]" at the time of the evaluation.  (*Id.*)

Plaintiff also reported "a history of medical problems related to mood and anxiety problems."  (R. at 1916.)  Dr. Ward observed that Plaintiff conversed at a normal speed and that his "language skills were adequate."  (*Id.*)  He also noted that Plaintiff repeated questions due to his focus problems.  (*Id.*)  Citing Plaintiff's "phraseology, grammatical structure, and vocabulary[,]" Dr. Ward assessed Plaintiff to be in the low-average range of intellectual functioning.  (*Id.*)  Dr. Ward stated that Plaintiff "presented as depressed and agitated during the evaluation. His affect was tearful at points."  (*Id.*)  Plaintiff described symptoms of depression, difficulties sleeping, loss of appetite, and problems with boredom and anger, as well as symptoms of anxiety such as chest pains, hot flashes, and breathing problems.  (*Id.* at 1918.)  Dr. Ward assessed Plaintiff's remote recall as adequate and his short term memory as below average, noting that Plaintiff was only able to recall four digits forward and three digits backward.  (*Id.*)  Dr. Ward concluded that Plaintiff "did not appear to exaggerate or minimize his difficulties," explaining that Plaintiff "did not report unusual or unlikely combinations of symptoms. [Plaintiff] reported areas of intact function in addition to reporting symptoms."  (*Id.* at 1917-18.)

6

Dr. Ward offered the following functional assessment of Plaintiff's ability to understand, remember, and carry out instructions: "[t]he claimant's abstract reasoning skills are below average which may lead to difficulty understanding instructions[;] [t]he claimant's short term memory skills are below average which may lead to difficulty remembering instructions[;] [and] [t]he claimant was able to converse effectively to complete the evaluation[.]" (*Id.* at 1919.) With regard to Plaintiff's attention and concentration limits, Dr. Ward determined, "[t]he claimant had difficulty completing serial 7s but effectively completed a serious 3s task which suggest some difficulty with attention and focus[;] [t]he claimant displayed effective task persistence when answering questions[;] [and] [t]he claimant displayed indications of distraction during the evaluation including requests to repeat questions[.]" (*Id.* at 1920.) Dr. Ward further opined as follows: "[t]he claimant presented as depressed during the evaluation which may affect level of engagement with co-workers and supervisors[;] [t]he claimant has no friends and limited contact with family with whom generally negative relationships were described including periodic conflicts[;] [and] [t]he claimant described problems with authority figures[.]" (*Id.*) Dr. Ward's offered the following discussion regarding Plaintiff's ability to respond to work pressure:

> The claimant presented with emotional instability when discussing past and current pressures[;] [t]he claimant described depressive symptoms that may compromise ability to respond to work pressures and lead to increased emotional instability and withdrawal[;] [t]he claimant described anxious symptoms that may compromise ability to respond to work pressures and lead to increased likelihood of agitation and conflicts with others[.]

(R. at 1920.)

**C.**     **State Agency Evaluations**

On November 10, 2010, state agency psychologist Todd Finnerty Psy.D., adopted the

mental RFC assessed in the 2009 decision.[3] and opined that Plaintiff's restrictions ranged from mild to moderate. (R. at 196–201.) Dr. Finnerty considered Dr. Miller's opinion, and concluded that it was inconsistent with the record. (*Id.* at 202–03.)

Upon review in March 2011, Kristen Haskins, Psy.D. likewise adopted the mental RFC assessed in the 2009 decision, again finding Dr. Miller's opinion to be inconsistent with the record. (*Id.* at 227–28.) Dr. Haskins opined that Plaintiff was able to "understand, remember, and carry out simple tasks and instructions." (*Id.* at 230.) She also determined that Plaintiff's attention span would last for two-hour segments during an eight-hour workday and that he would be able to appropriately respond to supervisors and coworkers. (*Id.*)

Also in March 2011, state agency reviewing physician Leon D. Hughes, M.D. adopted the RFC assessed in the 2009 decision, reasoning in relevant part as follows: "although you may have some emotional problems, you are able to think, communicate and act in your own interest. While we recognize your conditions are serious, they are not so severe that you can be considered totally disabled." (*Id.* at 232.)

In September 2011, Dr. Finnerty again reviewed the record and also reached the same conclusion. (R. at 104–114.)

---

[3]The 2009 decision included the following mental RFC assessment:

> Mentally, the claimant is able to understand, remember and carry out simple tasks and instructions. The claimant can maintain concentration and attention for two-hour segments over an eight-hour work period. He can respond appropriately to supervisors and co-workers, and he can adapt to simple changes and avoid hazards.

(R. at 97.)

On May 8, 2012, Katherine Fernandez, Psy.D. reviewed the record at the reconsideration level and affirmed the prior assessments, specifically noting that she had considered Plaintiff's allegations of worsening psychological symptoms, as well as Dr. Ward's consultative examiner's report. (*Id.* at 128–46.)

D.   **Treatment Records from Six County[4]**

On July 5, 2011, Plaintiff was seen by Six County, Inc. Behavioral Health Counseling and Therapy Service ("Six County") after a gap in treatment. Plaintiff reported having more depression since his February 2010 car accident and said that he was there to receive counseling. (R. at 1621.) Plaintiff said that he was in a lot of pain and identified the following limitations: "can't bend, very little lifting, can't walk very far." (*Id.* at 1621.) He also said that he last worked in February of 2006 as security for General Electric. (*Id.*) Plaintiff indicated that he had previously been diagnosed with anxiety, extreme depression and anger, and Bipolar Disorder. (*Id.* at 1622.) Plaintiff said that he smokes about half a pack of cigarettes per day, but that he does not take illegal drugs or drink alcohol. (*Id.* at 1623.) He reported a history of domestic abuse with his parents and in other relationships. (*Id.*) Plaintiff represented that he worries constantly and suffers from three-to-four panic attacks a day. (*Id.*) He also said that he is prone to yelling and that "the best thing [sic] for [him] is not to be around a lot of people." (*Id.*)

Treating psychologist Peggy Roth, LPCC noted that Plaintiff did not exhibit any antisocial traits. (*Id.*) She diagnosed him with posttraumatic stress disorder, generalized anxiety disorder, and bipolar I disorder. (*Id.* at 1626.) She made note of his other diagnoses,

---

[4] The Undersigned limits discussion to evidence pertaining to Plaintiff's most recent alleged onset date of June 22, 2010.

9

including: fibromyalgia, osteoarthritis, asthma, COPD, Bronchitis, Degenerative Disk Disease, Central Pain Syndrome, and bulging neck disk. (*Id.*) She opined that Plaintiff exhibited moderate symptoms and moderate difficulty in social, occupational, or school functioning. (*Id.*)

Plaintiff next visited Six County on February 6, 2012. (R. at 1932.) Plaintiff brought his two-year-old granddaughter to the counseling session with him and indicated he was taking care of her, although he questioned how much longer he could manage that. (*Id.*) Plaintiff rated his depression as a level 10/10 during this meeting. (*Id.*)

Plaintiff next visited on May 3, 2012. (*Id.* at 1935.) During this session, Plaintiff ranked his depression as an 8/10. (*Id.*) He described his granddaughter as "the one positive in his life." (*Id.*) Psychologist Roth opined that Plaintiff had made progress. More specifically, she noted that "even though [Plaintiff] started out negative, he looks better (less depressed) than he did and he is not complaining as much. He did not seem as helpless today and he is not having [suicidal ideation]." (*Id.*) At his next appointment on June 5, 2012, she observed that Plaintiff did not show any progress and seemed "less hopeful and his depression [was] still high." (*Id.* at 1936.)

In connection with his August 10, 2012 appointment, Roth observed that Plaintiff appeared to have more hope notwithstanding his self-reports of pain. (*Id.* at 1994.) Plaintiff told Roth that taking care of his granddaughter gave him purpose. (*Id.*) At his September 5, 2012 appointment, Plaintiff reported that he was anxious, but Roth observed that he did not present as being so. (*Id.* at 1995.)

## E. Treatment Records from Coshocton County Memorial Hospital

Plaintiff was treated at Coshocton County Memorial Hospital on February 6, 2014, for

10

chronic pain. (R. at 2234.) Plaintiff also complained of psychiatric symptoms including: "mood changes, memory loss, depression, and difficulty concentrating and sleep problems." (*Id.*) He reported that he had full custody of his granddaughter. (*Id.*) In 2015, Dr. Pratik Vaishnav at Coshocton County described Plaintiff's psychiatric presentment as follows: "normal affect, normal mood. Absent: depressed." (*Id.* at 2396.)

**F.     Treatment Records from Family Care**

Plaintiff visited Family Care Behavior Health ("Family Care") on November 16, 2015. (R. at 2412.) The therapist ranked both his anxiety and depression as severe and diagnosed Major Depressive Disorder and Bipolar Disorder. (*Id.* at 2409–13.) Plaintiff reported that he was living with a friend. (*Id.* at 2406.)

**G.     Vocational Expert Testimony**

The vocational expert ("VE") testified at the administrative hearing that Plaintiff's past jobs included work as a security guard. (R. at 2126.)

The ALJ proposed a series of hypotheticals regarding an individual of Plaintiff's age, education, and work experience and with the RFC he ultimately assessed. The VE testified that such an individual would be able to perform approximately 210,000 light exertion, unskilled jobs in the national economy such as a hand packager, garment folder, or sorter. (R. at 2128.)

### III.     THE ADMINISTRATIVE DECISION

On February 25, 2016, the ALJ issued his decision. (R. at 2109–28.) At step one of

the sequential evaluation process,[5] the ALJ determined that Plaintiff had not engaged in substantially gainful activity since June 22, 2010, his alleged onset date of disability. (*Id.* at 2112.) The ALJ found that Plaintiff had the following severe impairments: "left arm/shoulder tendinosis, degenerative disease of the cervical spine, fibromyalgia, degenerative joint disease, chronic obstructive pulmonary disease (COPD), pain disorder, and affective and anxiety-related disorders." (*Id.*) Since the September 16, 2009 decision, the ALJ determined that the record supported the additional diagnoses of fibromyalgia, degenerative joint disease, COPD, and pain disorder. (*Id.* at 2113.) The ALJ further found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 2114.) At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> The claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), except he can occasionally balance, stoop, crouch, and climb ramps and stairs, but never climb ladders, ropes, or

---

[5] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

scaffolds. He can frequently reach in all directions except for only occasional overhead reaching. He can occasionally be exposed to respiratory irritants. He can perform goal-based production/work measured by end-result, not pace work. He can perform simple, routine, and repetitive tasks. He can perform low stress work defined as requiring only occasional decision making and only occasional changes in the work setting. He can occasionally interact with coworkers and supervisors, but he must avoid interacting with the public. He would be off task up to five percent of the workday.

(R. at 2117.) In reaching this determination, the ALJ found that there was evidence that Plaintiff's mental symptomology was aggravated with stress. (*Id.* at 2124.) The ALJ assigned "great weight" to Dr. Ward's opinion, noting that he accounted for Dr. Ward's assessment of Plaintiff's "abilities to deal with stress and interact with others" in his RFC determination. (*Id.* at 2125.) The ALJ explained that he limited Plaintiff to goal-based rather than pace-based production, as well as "simple, routine, and repetitive tasks," because he required a low-stress environment. (*Id.*) The ALJ assigned "little weight" to Dr. Miller's assessment, reasoning that his assessment was inconsistent with the record as a whole and further explaining that Plaintiff's "presentation during Dr. Miller's assessment was inconsistent with the majority of treatment records . . . which generally indicated, at most, rather mild or moderate mental symptomatology." (*Id.*)

Relying on the VE's testimony, the ALJ concluded that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (R. at 2128.) He therefore concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since his alleged onset date through the date of the decision.

## IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478

F.3d 742, 746 (6th Cir. 2007)).

## V. ANALYSIS

As set forth above, in his sole contention of error, Plaintiff's challenges the ALJ's consideration and weighing of Dr. Miller's opinion.[6] The undersigned finds Plaintiff's sole contention of error to be without merit.

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c); *see also* SSR 96–8p 1996 WL 374184, at *7 (July 2, 1996) ("The RFC assessment must always consider and address medical source opinions."). The applicable regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including [Plaintiff's] symptoms, diagnosis and prognosis, what [Plaintiff] can still do despite impairment(s), and [Plaintiff's] physical or mental restrictions." 20 C.F.R. § 416.927(a)(1).

"[T]he Commissioner's regulations establish a hierarchy of acceptable medical source opinions[.]" *Snell v. Comm'r of Soc. Sec.*, No. 3:12-cv-119, 2013 WL 372032, at *9 (S.D. Ohio Jan. 30, 2013). Treating physicians and psychologists are generally afforded the most weight. *Id.* "Next in the hierarchy are examining physicians and psychologists, who often see and examine claimant only once." *Id.* "[N]on-examining physicians' opinions are on the lowest rung

---

[6]Plaintiff mentions but does not challenge the ALJ's consideration of treating podiatrist Jon Smilo's opinion. The undersigned therefore considers any challenge to the ALJ's evaluation of Dr. Smilo's opinion waived. *See McPherson v. Kelsey*, 125 F.3d 989, 996-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (internal quotation marks and citations omitted)); *Hollon v. Comm'r of Soc. Sec*., 447 F.3d 477, 490-91 (6th Cir. 2006) ("This challenge warrants little discussion, as [Plaintiff] has made little effort to develop this argument in her brief on appeal, or to identify any specific aspects of the Commissioner's determination that lack support in the record.").

15

of the hierarchy of medical source opinions." *Id.* "When determining how much weight to assign the opinion of a non-treating source . . . 'the ALJ should consider factors including the length and nature of the treatment relationship, the evidence that the physician offered in support of [his] opinion, how consistent the opinion is with the record as a whole, and whether the physician was practicing in [his] specialty.'" *Miller v. Commissioner of Soc. Sec.*, 811 F.3d 825, 836 (6th Cir. 2016) (quoting *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010)).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(d). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. *Id.*; *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

In this case, the ALJ offered a detailed discussion of consultative examiner Dr. Miller's assessment. (*See* R. at 2115-16, 2123-25.) The ALJ assigned Dr. Miller's assessment "little weight" and offered the following explanation:

> I give little weight to the assessment of Dr. Miller, who evaluated the claimant on just one occasion and did not have an opportunity to treat him. The claimant's presentation during Dr. Miller's assessment was inconsistent with the majority of treatment records, as summarized above, which generally indicated, at most, rather mild or moderate mental symptomatology. Accordingly, Dr. Miller's conclusions were inconsistent with the longitudinal treatment record.

(R. at 2124–25 (internal citations to the record omitted).) The ALJ also offered a thorough discussion detailing Plaintiff's hearing testimony, Plaintiff's girlfriend's hearing testimony, Plaintiff's activities of daily living, Plaintiff's treatment history, and the opinions from other medical sources. He explained that he accorded the opinion of consultative examiner Dr. Ward "great weight" and stated that the RFC accommodated the concerns Dr. Ward identified. (R. at

16

2125.)   The ALJ also noted that all of the state agency reviewing psychologists, including Dr. Fernandez, who had reviewed the record in May 2012, agreed with the 2009 decision's mental RFC assessment.   The ALJ observed, however, that the record reflected periods of "increased mental symptomatology, which is attributable to stress" and that Plaintiff had reported that he has "difficulty interacting with others."   (R. at 2124.)   The ALJ therefore concluded that Plaintiff was *more* limited than all of the state agency reviewing psychologists had opined and included *numerous* additional limitations in the mental RFC assessment to accommodate these limitations.

The undersigned finds no error in the ALJ's consideration and weighing of the assessment of one-time, examining psychologist Dr. Miller.   As a threshold matter, the opinions of one-time examining psychologists are not entitled to any special deference.   *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).   Thus, the ALJ was not even required to give good reasons for the rejection of such an opinion.   *See Smith v. Commissioner*, 482 F.3d 873, 876 (6th Cir. 2007); *cf. Pasco v. Comm'r of Soc. Sec.,* 137 F. App'x 828, 839 (6th Cir. 2005) (no error where the ALJ failed to mention report of consultative neurologist who only evaluated plaintiff once and was not a treating source); *Dykes v. Barnhart*, 112 F. App'x 463, 467–69 (6th Cir. 2004) (failure to discuss opinion of consultative examiner was harmless error).   And notably, the ALJ ultimately concluded that Plaintiff was *more* limited than Dr. Miller opined in some regards.   (*Compare* R. at 1299 (Dr. Miller opined that Plaintiff's "cognitive ability to understand, remember and carry out routine instructions indicate no impairment.") *with* R. at 2117 (ALJ's mental RFC limits Plaintiff to "simple, routine, and repetitive tasks").)

The ALJ nevertheless did offer a thorough discussion of Dr. Miller's assessment and

17

offered good reasons for why he afforded it only little weight. Moreover, substantial evidence supports the reasons the ALJ offered. For example, the ALJ asserted that Plaintiff's presentation to Dr. Miller was "inconsistent with a majority of the treatment records . . . which generally indicated, at most, rather mild or moderate mental symptomatology." (R. at 2124–25.) Consistent with the ALJ's determination that Plaintiff's presentment was different during Dr. Miller's assessment than during other evaluations, the ALJ cited to numerous treatments records from 2011–2015 where providers observed that Plaintiff displayed an intact mood, good eye contact, and an alert and oriented demeanor. (*See* R. at 2123–24.) The ALJ also pointed out that although Plaintiff said he was anxious at his September 5, 2012 appointment at Six County, his provider observed that Plaintiff did not appear "wound up or anxious." (*Id.* at 1995; *see also* R. at 2055 (In 2014, Dr. Velasquez described Plaintiff's "judgment and cognition [as] intact [and his] mood normal."); R. at 2396 (In 2015, Dr. Pratik Vaishnav at Coshocton County noted that Plaintiff's psychiatric presentment was normal and absent depression.).)

Plaintiff's contention that the ALJ unfairly "used the fact that [Plaintiff was evaluated on only one occasion] to discredit only one examiner but not the other," (Pl.'s Statement of Errors, ECF No. 23-1 at PAGEID# 2674), fails to persuade. Rather, the ALJ properly considered that Dr. Miller had evaluated Plaintiff on only one occasion in 2010. *See* 20 C.F.R. 404.1527(c)(ii) (citing length of treatment relationship as a factor for evaluating a medical source opinion). And contrary to Plaintiff's assertion, review of the ALJ's decision makes clear that this is just one of many factors he considered and that his primary basis for discounting Dr. Miller's opinion was that Plaintiff's presentation to Dr. Miller was inconsistent with the record as a whole.

Finally, the undersigned finds Plaintiff's challenges to the ALJ's evaluation of the GAF

scores to be without merit. The ALJ acknowledged the GAF scores reflected in the record, but assigned them "little weight." (R. at 2125-26.) The ALJ correctly pointed out that a GAF score represents a "snapshot" of a person's "overall psychological functioning" at or near the time of the evaluation. (R. at 2125-26); *See Martin v. Commissioner*, 61 F. App'x 191, 194 n. 2 (6th Cir. 2003); *see also* DSM-IV-TR at 32–34. "As such, a GAF assessment is isolated to a relatively brief period of time, rather than being significantly probative of a person's ability to perform mental work activities on a full-time basis." *Arnold v. Astrue*, No. 10-cv-13, 2010 WL 5812957, at *8 (S.D. Ohio Oct. 7, 2010); *see also Kennedy v. Astrue,* 247 F. App'x 761, 766 (6th Cir. 2007) ("[T]he Commissioner has declined to endorse the GAF score for use in the Social Security and SSI disability programs, and has indicated that GAF scores have no direct correlation to the severity requirements of the mental disorders listings." (internal quotation marks and citations omitted)). Thus, in light of the ALJ's thorough discussion of the record and explanation for the bases for the mental RFC he assessed, the undersigned finds that he did not err in declining to credit the GAF scores referenced in the record.

In summary, the undersigned finds no error with the ALJ's consideration and weighing of Dr. Miller's opinion. Further, the undersigned finds that substantial evidence supports the ALJ's mental RFC assessment. It is therefore **RECOMMENDED** that the Court **OVERRULE** Plaintiff's sole contention of error.

## VI. DISPOSITION

From a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of

19

Social Security's decision.

## VII. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

　　　　　　　　　　　　　　　　　　　　　　　 /s/ *Chelsey M. Vascura*
　　　　　　　　　　　　　　　　　　　　　　　CHELSEY M. VASCURA
　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE